No. 4.—MICHAEL C. MOORE, plaintiff in error *vs.* VINCENT FERRELL et al. defendants in error.

## *Injunction.*

Service of the Rule Nisi upon the complainant's Solicitor stating the grounds of the application, and fixing the time and place of hearing the motion to dissolve an Injunction in vacation, on the coming in of the answer, is sufficient service.

Where the answer plainly and distinctly denies the facts and circumstances upon which the Equity of the bill is based, the Injunction will be dissolved.

Upon a motion to dissolve an Injunction, the court will look to such parts of the answer *only*, as are responsive to the Bill.

A defendant in Equity cannot both charge and discharge himself by his answer.

In cases where Equity interferes to execute preventive justice, by enjoining trespasses, she still forbears to intermeddle with the title.

Trespass will be enjoined, in all cases, where from the nature of the trespass, or the circumstances of the parties, the remedy at law cannot be full and adequate.

All persons are entitled to be protected in the use, integrity, and value of their property; and where courts of law cannot give such protection; whether because of the tardiness of the remedy—the peculiar nature of the property injured—the insolvency of the wrong-doer, or the plaintiff's inability to prove his damage—Equity must needs interfere, in order that justice be done, with her harsh, but *indispensable* process of Injunction. An Injunction will not be dissolved upon the ground that the title of the complainant is questioned by the answer. But where the title is denied, the courts will look more closely to the character of the trespass.

For the facts of this case, see the opinion of the court.

UNDERWOOD & TRIPPE, for the plaintiff in error, cited *4th Rule in Equity Practice, established by the Judges of the Superior Courts of this State in Convention,* in support of the second ground of error. In support of the 3d ground 3 *Ves.* 140; 6 *ib.* 707, 147; 17 *Ves.* 110; 7 *Ves.* 589; 2 *Johns. C. Rep.* 122; 17 *Ves.* 128–281; 15 *Ves.* 138; 2 *Johns. Rep.* 473; 1 *Johns. Rep.* 12; 7 *Johns. Rep.* 320–330; 6 *Johns. Rep.* 497; 2 *Johns. Rep.* 202.

AKIN, for defendants, cited *Pillsworth* vs. *Hopton,* 6 *Ves.* 51; *Hanson* vs. *Gardner,* 7 *Ves.* 301; *Smith* vs. *Collier,* 8 *Ves.* 89; *Courthope* vs. *Maplesden,* 10 *Ves.* 290; *Norway* vs. *Rowe,* 19 *Ves.* 146; *Stonn* vs. *Mann,* 4 *Johns. C. Rep.* 21; *Eden on Injunctions* 233–5; 2 *Story's Com. on eq.* 209.

*By the Court*—NISBET, Judge.

This cause came before this court, upon a transcript of the record, from the county of Gilmer. The plaintiff in error, Michael C. Moore, filed his bill in the court below, alleging that, as a fortunate drawer in the land lottery, he is the rightful owner of a lot of land situate in the county of Gilmer—that there is on it a rich, and therefore valuable, gold mine—that the defendants, Ferrell and others, being in possession, are engaged in digging gold from the mine, and are daily carrying away large quantities of gold—that they are either insolvent, or so poor as to be unable to respond in damages—that it is impossible to prove the amount of injury which they are likely to do to the complainant, without resort to their consciences, and that the trespass of the defendants will result in irreparable injury to him, unless they are restrained. The bill concludes with a prayer for Injunction—that the title papers of the defendants be delivered up to be canceled, and for relief generally.

The bill was sanctioned and the Injunction ordered. Before the appearance Term of the bill, the defendants filed their answer and moved the court at Chambers for a rule upon the complainant to show cause why the injunction should not be dissolved. The rule being granted, service thereof was perfected, upon the complainant's solicitor. The an-

swer admits that the complainant was the drawer of a lot of land under the lottery acts of the State of Georgia, and that the State's grant had duly issued to him; but states that since the issuing of the grant, the land has been sold as the property of the complainant, by the Sheriff of Gilmer county—by virtue of an Execution against the complainant, issued from a Magistrate's Court—and that they claim title under the purchaser at the Sheriff's sale.

The defendants, in their answer, further state that the complainant has parted with all the title which he ever had to the land by deed to one Samuel Tate. They admit that they are in possession and engaged with a large force in digging gold—that the mine on the land is valuable, and that they receive from it daily a considerable amount of gold. Their insolvency they neither admit nor wholly deny. Such are the facts embraced in the bill and answer, which the court think necessary to be stated, in order to a clear understanding of the principles of law, which they believe govern this cause.

The Judge of the Circuit Court having heard argument at Chambers, upon the rule, dissolved the injunction. To this decision the complainant excepted, and assigned for error:

1st. That the Injunction was dissolved before the term of the court to which the bill was returnable, contrary to the Statute of Georgia.

2d. That the rule to show cause was not legally served—it being served on the complainant's solicitor, when it should have been served on the complainant himself.

3d. That the bill being filed to restrain a trespass upon a gold mine, and the matter set forth therein, showing a case of irreparable injury to the complainant, and of utter destruction to the mine, a Court of Chancery will enjoin the trespass, until the title to the land can be settled by judgment of a court of law.

Two other assignments of error were made, but are considered only as different forms of the third assignment. Issue being joined, the cause was ably argued upon the second and third assignments, the first being abandoned by the counsel for the plaintiff in error.

In the 4th of our rules in equity, it is provided that in cases of injunction, the respondent shall be entitled to file his answer at any time after the filing of the bill; and thereupon, at Chambers, moving the judge who granted the bill for the dissolution of the injunction: if the equity of the bill shall be sworn off by the answer. But in such cases a rule nisi, stating the grounds of the application, and fixing the time and place of hearing the motion, shall be served on the *complainant*, at least ten days before the hearing of any such motion. The service of the rule nisi in this case was made on the complainant's solicitor, instead of the complainant, and for this reason, it is contended, under the requirements of the rule recited above, that the court erred, in not dismissing the rule nisi, and holding up the injunction. This court does not so think. It is true that the 4th rule does require the service of the rule nisi to be on the complainant. The advantages of this requirement are more than counterbalanced by its inconveniences.

In most cases it would be more convenient, and therefore desirable, to the complainant himself, that the service should be upon his solicitor. It was intended, no doubt, as a boon, but it looks more like a burthen to the complainant. Why it is so, need not be here argued. Still if this

was the only rule upon the subject of service of notices, the court would be constrained to reverse the decision of the Circuit Judge. By the 16th of our rules in equity, it is provided as follows : " After appearance by the party defendant, to any bill in equity, by any solicitor of this court, the service of any subpœna *to make better answer,* or any rule or order of the court, on such defendant or solicitor shall be sufficient—service on complainant or his solicitor, shall in like manner be deemed sufficient service." The defendant having in this case, filed his answer by his solicitor, the court holds that to be such an appearance by counsel, as will bring the service of the rule nisi under the provisions of the 16th rule, and make it sufficient.

Waiving for a moment the main inquiry, and conceding that a Court of Chancery, can enjoin a trespass, aside from any other consideration, was the equity of this bill so denied, or sworn off by the answer as to entitle the defendants to a dissolution of the injunction ? The court are of opinion that it was not. It is a well settled rule in equity, that upon the coming in of an answer plainly and distinctly denying the facts and circumstances upon which the equity of the bill is based, the court will dissolve the injunction ; it is also settled that for the purposes of the dissolution, all such parts of the answer as are responsive to the bill are to be taken as true. What are the facts upon which the equity of this bill rests ? The title of the complainant to the land—its great value in consequence of the golden ore imbedded in it—the insolvency, or inability to respond in damages of the defendants, and the consequent irreparable injury they were doing to him, by digging his gold. It is because of these facts, thus stated, that the injunction was at first granted, and if not denied, they constitute still the strongest equity. Now so far from the answer denying them, they are all therein admitted, except the insolvency of the defendants, which it very unsatisfactorily denies. The answer admits that complainant drew the land, and that the State's grant was duly issued to him—that there is within it a rich mine which they (the defendants) are engaged in working, and that they abstract therefrom daily about one hundred pennyweights of gold. The irreparable character of the injury is a necessary legal inference from the facts admitted. So that, in the statements of the answer responsive to the bill, the court can find no sufficient denial of the complainant's equity. It is true that the answer states that complainant's title to the land passed from him to them, by levy and sale under a judgment against him ; and that in addition, he had parted with his title, by deed to a third person. Upon a motion to dissolve, the court cannot take these statements as true—they are not responsive to the bill, and are matter in avoidance, which the defendants would be compelled to prove on the trial.

A defendant in equity cannot both charge and discharge himself in his answer. The court therefore believe, that upon the concession of the right of equitable interference in this case, there is not such a denial of the equity of the bill, as can justify the dissolution of the injunction.— 4 *Johnson's C. Rep.* 499 ; 2 *Johnson's C. Rep.* 88 ; 7 *Vesey,* 587.

Upon the question, as to the power of a Court of Chancery, to restrain a trespass, in the case made by this bill and answer this court entertains no doubt whatever.

Ordinarily all remedy for a trespass is at law, because ordinarily that remedy is quite sufficient. And to the courts of law appertains the ju-

risdiction over titles to land. In all cases of ordinary trespass, equity will leave the party to his redress at law. And in cases where she interferes to execute preventive justice by enjoining trespassers, she still forbears to intermeddle with the title.

The remedy which courts of law afford for trespasses is retributive—it is indispensable to any adequate protection of the rights of the citizen, that there should exist somewhere a preventive power. This necessary power is wisely lodged with our courts of chancery, to be exercised with enlightened discretion, by process of injunction. Any system of laws which affords no such power, must be exceedingly defective. It is truly said by a learned English chancellor, that the want of it would be a reproach to the " moral jurisdiction" of courts of chancery. The jurisdiction here claimed for a court of equity, has been exercised in England since the time of Lord Thurlow ; for the first case of injunction for trespass, so far as we are informed, was that of Flammang (cited in 6 *Vesey,* 147) under his administration. The jurisdiction was conceded by Lord Eldon in subsequent cases, and has been acknowledged in this country by repeated adjudications before the highest tribunals. Formerly it was exercised only to restrain waste between parties holding privity of title ; now it is extended to all cases of trespass attended with irreparable mischief ; or which result in the destruction of the substance of the property ; or to cases where a plaintiff at law cannot prove his damage. Indeed trespass, will now be enjoined in all cases where, from the nature of the trespass, or the circumstances of the parties, the remedy at law cannot be full and adequate. Such as the working of mines, (6 *Vesey,* 147 ; 7 *Vesey,* 307.)—Destruction of timber, (10 *Vesey,* 290 ; 2 *Hill's C. R.* 617.)—The digging and amotion of stones of peculiar value, (17 *Vesey,* 128.)—Quarrying common stone, (18 *Vesey,* 184.)

The reasoning upon which all these cases are decided is very much the same. It starts with the assumption that all persons are entitled to be protected in the use, integrity, and value of their property ; and where courts of law cannot give such protection ; whether because of the tardiness of the remedy ; the peculiar nature of the property injured ; the insolvency of the wrong-doer, or the plaintiff's inability to prove his damage,—equity must needs interfere, in order that justice be done, with her harsh, but indispensable process of injunction. In the cases referred to the main inquiry was this, " Is the injury complained of likely to be irreparable ?" and when charged so to be in the bill, and obviously, from the facts stated, truly charged, the injunction has not been withheld. The application of this test to the case now under consideration, will, it is believed, at once dispel all doubt as to the error of the circuit judge in dissolving this injunction. This question came under the review of Chancellor Kent, in the last case which he tried before descending, at the bidding of the law, from the Bench,—it is reported in 7 *Johnson's C. Rep.* 332, and the question is discussed with the great Chancellor's usual learning and ability. See also 1 *Swanst.* 207 ; 15 *Vesey,* 138 ; 6 *Johnson's C. Rep.* 497 ; 1 *Johnson's C. Rep.* 318 ; *Eden on Injunctions,* 229 ; 1 *Page,* 97.

It is however contended by counsel for the defendant in error, that granting to a court of chancery the right to enjoin trespasses, in cases of irreparable injury, yet the interference of that court is limited to cases where the *title* of the complainant is not questioned by the answer, and inasmuch as this answer sets up title in the defendants, the injunction was

rightfully dissolved. Where injunctions have been granted to stay *waste*, as before stated, the cases have been founded on privity of title ; and in such cases no question as to title could be made. The distinction, so far as the jurisdiction of chancery is concerned, between waste and trespass, has been broken down. Now injunctions will be granted against waste and trespass, (6 *Johns. C. Rep.* 497,) but against trespass in the cases before designated, and in all such cases, whether the title be brought in issue or not. It seems, however, that where the complainant's title is denied, the courts will look more closely to the character of the trespass. In several of the cases relied upon by counsel for plaintiff in error, as shown by the comments of counsel for the defendants, there was no issue made about title. In other cases the title of the complainant was denied, or the defendants justified under an adverse title, or a legislative, or prescriptive right. In the case of 7 *Johns. C. Rep.*, the defendants who were charged with trespassing on the land of the complainant, in digging stone and other material to construct a dam on the Hudson, sought to justify by claiming, in their answer, that they were acting on behalf of the State, and by authority of its statute laws. The case in *Hill's C. Rep.*, in its facts and doctrines, strikingly sustains the position taken by this court. In that case the bill was filed to stay trespass in cutting down and removing timbers from the complainant's land, near to Columbia, and charged to be valuable only for the firewood that was on it.

The defendant in his answer admits the alleged trespass, but insists that he has a perfect legal and equitable title to the premises. Here both parties claim the title. The Chancellor granted the injunction, and upon appeal his decision was affirmed. In other cases, particular reference to which is not necessary, a similar state of facts is presented. Mr. Justice Story, in commenting upon this head of equity jurisdiction, says : " The interference of Courts of Equity in restraint of waste, was originally confined to cases founded in privity of title—but at present the courts have, by insensible degrees, enlarged the jurisdiction to reach cases of *adverse claims and rights, not founded in privity*, as for instance, to cases of trespass attended with irreparable mischief," (2 Story's Com. on Equity, 200.) The point made by the defendant's counsel, is met by this renowned commentator and in terms denied.

The reasons for giving to Courts of Equity, in our own State, this salutary jurisdiction, are conclusive ; and apply with equal force nowhere but in countries where mines of the precious metals abound. They are found in the number and value of our gold mines—the facility with which, in a very short space of time, incurable injury may be done to the property—the impossibility, in almost every case, of demonstrating by proof at law the extent of the damage—and in those temptations which gold alone can offer to the cupidity of the lawless. It is no answer to say that an injunction may work ruin to an honest owner. The withholding it will more frequently work ruin to honest owners. Besides, the defendant is protected by the injunction bond.

Upon reason and authority, therefore, this court determines, that the jurisdiction in courts of Equity, to restrain trespass in all cases like the present, is fully established, and the order of the circuit judge dissolving the injunction must be reversed.