## WOOD v. BRAXTON et al.

### (Circuit Court, D. West Virginia. July 29, 1892.)

1. EQUITY—JURISDICTION—ENJOINING THE CUTTING OF TIMBER.
   The jurisdiction of a court of equity to enjoin the cutting of timber from lands of which the title is in dispute is now fully established, irrespective of any question as to defendant's solvency or ability to respond in damages to an action at law.

2. SAME—INJUNCTION—WHEN ISSUED.
   Where the timber growing upon a tract of land constitutes the chief element of value, an injunction will issue to restrain the cutting of such timber pending an appeal to the supreme court of the United States in another action involving the title, wherein the present defendant obtained judgment against the present plaintiff in the trial court.

3. SAME.
   In such case, the fact that the time has elapsed in which an order could be made that the appeal should operate as a supersedeas will not prevent the awarding of the injunction, when it appears that at the time the decree appealed from was entered, and for long after, defendant manifested no purpose to cut timber from the lands.

4. SAME.
   It appearing, however, that defendant has expended large sums of money in preparing mills, booms, and roads for getting at the timber, and has a large number of laborers in its employ, the injunction will be dissolved upon the giving of a bond in an amount to be determined by the court

to indemnify the plaintiffs, and defendants will then be permitted to proceed with their business, upon rendering periodical accounts as the court may direct.

In Equity. Bill by Walter Wood against Tamlin Braxton and others to enjoin the cutting of timber upon certain lands pending an appeal from an action to determine the title as between the parties to the injunction. Injunction granted.

John J. Davis and H. M. Russell, for plaintiff.
John Brannon and W. Mollohan, for defendants.

GOFF, Circuit Judge. This is a motion for an injunction against the defendants restraining them from cutting and removing timber from the lands in the bill mentioned. The plaintiff alleges that he is the owner of a tract of land containing 100,000 acres, situated principally in Webster county, W. Va., known as the "Mc-Cleary Tract." He claims to be the sole and exclusive owner of the land, that he is in actual possession of part thereof, and that he is entitled to the possession of all. Copies of the deeds and title papers under which he claims, duly certified as such, are filed as exhibits, and made part of the record of this case. It is charged in the bill that the defendant "the West Virginia and Pittsburgh Railroad Company, its agents and employes, are committing great waste and doing irreparable injury to said land by cutting and removing valuable timber therefrom, without authority or right so to do." The plaintiff represents that certain other of the defendants "the Caperton heirs," who then claimed to be the owners of part of said land, instituted a proceeding in equity against the plaintiff and others, which involved the title to the land, and that such suit is now pending on appeal in the supreme court of the United States, and that defendants have unlawfully combined together and entered upon said land, and are removing the timber, which is alleged to be the substance and value of the land, while the appeal is pending and undecided. Plaintiff charges that if the timber is removed the land will be practically valueless, and that he will suffer irreparable injury, for which he has no adequate remedy at law.

The defendant "the West Virginia and Pittsburgh Railroad Company" answers the bill, and claims to be the owner of the "Caperton lands;" to have a "good and valid title to the whole thereof, superior to all others." A copy of the record of said case now pending in the supreme court of the United States, entitled "Benjamin Rich, Walter Wood, Richard Wood, et al., Appellants, vs. Tamlin Braxton et al., Appellees. Appeal from the circuit court of the United States for the district of West Virginia," is filed with the answer, and made a part of this case as an exhibit. It appears that on the 8th day of August, 1881, Tamlin Braxton and others, the heirs at law of Allen T. Caperton, deceased, commenced a suit in the circuit court of Webster county, W. Va., against the plaintiff and others, claiming title in their bill to five parcels of land, as follows: A tract, 41,171¼ acres, part of a tract of 153,-

900 acres granted to Robert Morris by patent dated March 12, 1797, 5,000 acres granted to Abner Cloud by patent dated March 10, 1795, 2,738 acres granted to A. C. & D. B. Layne by patent dated September 1, 1851, 9,330 acres granted to Austin Hollister by patent dated November 1, 1855, and 5,938 acres granted to said Hollister by patent dated February 1, 1858. The bill alleges that by conveyances regularly made from the grantees, and duly recorded, the title to about 50,000 acres of the Robert Morris grant, and to all of the other mentioned grants, was legally vested in fee in Allen T. Caperton prior to the year 1860, and that he was the owner thereof at the time of his death, and that the lands are located in the counties of Greenbriar, Nicholas, and Webster, in the state of West Virginia. That prior to the year 1868 the title of Caperton to the land had never been questioned, and that during that year Benjamin Rich, G. P. Shreeve, and Albert Owen, with intent to defraud Caperton of his lands, entered or caused to be entered on the land books of Webster county a number of large tracts of land, among others a tract of 100,000 acres, in the name of William McCleary, and also a tract of 58,500 acres in the name of Henry Banks. That they allowed said two tracts of land to be returned delinquent for the nonpayment of the taxes assessed thereon for the year 1868, and at a sale made by the sheriff of Webster county of the lands mentioned for the delinquent taxes due thereon (on the 24th day of September, 1869) they, Rich, Shreeve, and Owen, became the joint purchasers thereof for said taxes, and that deeds for the same were made to them. That by various deeds certain portions of the lands, and certain interests therein, were conveyed to different persons, and that the defendants in that suit (the present plaintiff, Walter Wood, being one of them) claimed to have the legal title to the same, but that in fact and in law all of their deeds were inoperative, null and void, because obtained by fraud and collusion, and because of certain defects in the execution thereof, and in connection with the tax sale, which were set forth in said bill. It is not necessary, for the purposes of this motion, to examine all of the deeds, nor refer to the different persons who have claimed an interest in the lands by virtue thereof, nor mention either the reasons assigned why the deeds are void or the defense made relative thereto. This court, at this time, is not to determine the issues joined in that controversy. But it should be noted here that it is charged in the bill filed therein that the 100,000-acre tract and the 58,500-acre tract mentioned cover and include, as parts thereof, the whole of the lands as claimed by Allen T. Caperton in his lifetime, and that a portion thereof was in the possession of two of the defendants to that suit, who claimed it under contracts made with Rich and those claiming under him, and that the prayer of said bill was that the deeds to Rich and others under the tax sale, and the subsequent deeds based thereon, should be held and decreed inoperative, null and void, and that the title of the heirs of Caperton in and to the lands be quieted. On the 3d day of April, 1882, the suit was, on petition of Edward R. Wood and Walter Wood, under the provisions of the act of congress in such proceedings provided, re-

moved from the circuit court of Webster county, W. Va., to the circuit court of the United States for the district of West Virginia at Parkersburg, where it was docketed on the 12th day June, 1882. Several amended and supplemental bills were, with leave of the court, filed. Much testimony was taken. The case was finally matured, and on the 27th day of September, 1889, having then been pending over eight years, a decree was passed by this court, Hon. John J. Jackson, district judge, presiding, in and by which the deeds complained of (the same being the conveyances under which the plaintiff in this proceeding claims title) were each and all of them set aside as inoperative, fraudulent, null and void, and as clouds upon the title of the heirs of Allen T. Caperton to said land. 47 Fed. Rep. 178. From this decree, upon motion of Rich, Wood, and others, defendants in the suit, an appeal was awarded, and is now pending in the supreme court of the United States.

The jurisdiction of courts of equity by way of injunction to restrain waste, to prevent the cutting of timber, and the mining of minerals, is one of comparatively recent origin, but it is now fully recognized and well established in this country as well as in England. A leading case, in which the question of equity jurisdiction in such controversies was fully considered and previous authorities discussed, is that of Jerome v. Ross, 7 Johns. Ch. 315. This is the last decree rendered by that illustrious chancellor, whose able, clear, and erudite opinions, not only charm, but instruct and convince us,—Kent,—and it is replete with the wisdom of the English and American decisions on that question. See, also, Anderson v. Harney, 10 Grat. 386; McMillan v. Ferrell, 7 W. Va. 223; Moore v. Ferrell, 1 Ga. 7; Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. Rep. 565.

If the nature of the injury complained of goes to the substance of the estate, thereby producing irreparable mischief, equity will interfere in limine, and not require the party to resort to an action at law, and this independent of the question of the insolvency of the defendant. The chief value of the land in the bill mentioned is charged to be in its timber, and this the defendants, it is. conceded, have made extensive arrangements to remove, having expended many thousands of dollars for that purpose. This removal goes to the very substance of the inheritance, to the destruction of that which is the main element of value to it. The fact that the value of timber can be estimated, that it can be determined by the thousand feet, or by the car load, does not deprive a court of equity of the right to interfere by way of injunction, in cases where it is being cut and removed or destroyed, and where the ownership is in controversy. The products of mines and forests have a value that can generally be fixed, yet it was in prevention of trespasses to property of that character that the jurisdiction in question had its origin, and is now most frequently exercised. While it is true that, when this jurisdiction for equity was first claimed, "Lord Thurlow hesitated" and "Lord Eldon doubted," it is now well determined—the decisions coming from courts of such character as to command our respect and of such grade as to compel our approval—that the jurisdiction not only exists, but that it is absolutely essential for the preservation of right and the suppression of wrong.

What force, if any, shall the decree appealed from have, relative to this motion for an injunction? This court is not now to express an opinion as to the validity of the plaintiff's claim to the land in question, nor as to the strength of the defendant's title thereto, nor will the fact that the court in the case now pending on appeal has decreed against the present plaintiff, holding his title papers void, prevent this court from taking such action as will protect the rights of said plaintiff in and to the property in controversy in the event it shall be held that the decree so appealed from is erroneous. Had this motion been made before the decree was passed, would it, on the facts as now presented, pending said suit, have been granted? I think so. If the writ of injunction had issued before said decree was entered, and had been in force at the time thereof, it would likely have been there dissolved in express terms, and greater reason would have existed for providing that the appeal then taken should have had the force and effect of a supersedeas, the absence of which is relied on in the answer filed in this case, and was commented on in the argument of counsel in connection with this motion. It must be kept in mind that the situation as to the property in question is very different now from what it was when the decree was entered by Judge Jackson. At that time no one was attempting to remove the timber on said land, or making arrangements to do so, by constructing roads and mills, and the point made by the defendant, the "West Virginia and Pittsburgh Railroad Company," that this court should not grant the injunction prayed for, because the case appealed is still pending in the supreme court of the United States, and the time has elapsed in which an order could be made that the appeal should operate as a supersedeas, is without force when we consider the changed condition of affairs, brought about by the defendant railroad company, whose answer admits that the lands in controversy were conveyed to it after the rendition of said decree, of which it was advised when it purchased, and that it commenced to construct the roads, booms, and mills mentioned in the bill, and to remove the timber complained of, some time after it so purchased the land. These facts materially change the situation. Had they existed when the appeal was taken, it would doubtless have been awarded to operate as a supersedeas, and as they now exist for the first time an injunction is asked for. It is not for this court to consider the questions raised by the appeal; that is for the supreme court of the United States.

It is for this court to consider the facts as presented on the hearing of this motion; and, as they have arisen since the appeal was granted, the supreme court, as to them, would not have jurisdiction by virtue of the appeal. This suit is simply to restrain the commission of waste by the defendants pending the appeal, and the preventive writ of injunction is asked for to preserve the property from destruction until a decision of the questions involved is made by the supreme court of the United States. That decision will settle the title to the property in controversy, and determine the rights of all the parties hereto therein. The writ will issue; the injunction will be granted, enjoining and restraining the defendants the "West

Virginia and Pittsburgh Railroad Company," Daniel C. Flynn, and Henry M. Dawson, and each of them, their and each of their agents, from cutting and removing timber from the tract of land described in the bill as the "McCleary Land," until the further order of this court; the plaintiffs to give bond with good and approved security, (conditioned as required by law, in a penalty yet to be determined by the court,) before the writ of injunction shall issue.

While the court will thus protect the interest of the plaintiff pending the appeal, it cannot be indifferent to the claims of the defendants to the property in controversy, and it is evident it will work great hardship to the defendants to require them to cease the work now partially completed, and to stop the use of the mills and booms now constructed, and now being utilized in removing the timber. If the court can protect the rights of all the parties to this controversy, and at the same time not take such action as will require the dismissal from employment of the large number of men now working for defendants on the land in dispute, and the nonuse and injury to the valuable and expensive machinery connected with the improvements, it should do so. In my opinion, this can be done, and I may add that I think it is peculiarly a case where it should be done. The injunction against the defendants, when awarded, will remain in force and effect, unless they, or either of them, or some one for them, shall execute a bond with good and approved security, conditioned. as required by law and the rules of this court, in a penalty yet to be determined by the court. When such bond shall have been executed. approved by the court, and filed with the clerk, the operation and effect of the injunction will be suspended, and the defendants be authorized and permitted to cut and remove the timber from the land in controversy, but they will be required to report at stated times to the court the quantity and character of the timber so cut and removed, in order that an accurate account of the same may be kept, and the interests of all parties to the pending controversy protected, so that such decree as may be proper can be entered after the appeal now pending shall have been determined.