CAMP *et al. v.* DIXON, MITCHELL & CO., and *vice versa.*

1. The cutting and removal of timber from forest lands is a destructive trespass, and one liable in its nature to cause irreparable damage to the owners of the timber. Consequently, an injunction will issue to restrain such a trespass, where it is a continuing one which would result in denuding the land of its timber, and where the owners thereof have made large investments in sawmills and equipment, preparatory to converting the timber into lumber to sell in the markets, notwithstanding the alleged trespasser may be entirely solvent. In such a case the remedy at law by an action for damages is not adequate and complete, as the damage resulting to the owners of the timber in the depreciation of the value of their plant and equipment and in the loss of expected profits can not be accurately and completely measured in money.

2. Even if error was committed in the admission of the evidence of which complaint is made in the cross-bill of exceptions, it was not of such a character as to prejudice the rights of the defendants.

Argued January 22,—Decided March 1, 1901.

Petition for injunction.    Before Judge Spence.    Echols superior court.    December 21, 1900.

*J. L. Sweat* and *Spencer R. Atkinson*, for plaintiffs.

*Charlton & Charlton*, *S. T. Kingsbery & Son*, and *Toomer & Reynolds*, for defendants.

COBB, J.  R. J. & B. F. Camp filed an application for an injunction to restrain the defendants, Dixon, Mitchell & Company, from cutting and removing the timber from eight described lots of land, it being alleged that the plaintiffs were the lawful owners of the timber.   The judge passed an order refusing to grant an injunction, and to this judgment the plaintiffs excepted.

1. The plaintiffs in error claim that the refusal to grant the injunction was erroneous for several reasons; but, under the view we have taken of the case, it is necessary to refer to only one of them. One of the grounds upon which the plaintiffs predicated their right to an injunction was that the acts of trespass committed by the defendants were irreparable in damages.   There was evidence from which the judge could have found that the defendants were entirely solvent, and the case will be dealt with as if he had so found. With reference to the character of the acts committed by the defendants, as well as the character of the damages thereby sustained, the plaintiffs alleged in their petition: The defendants, having a steam sawmill in Echols county, have, without warrant or authority of law, and to the great injury and damage of plaintiffs, entered upon certain of the lots described in the petition, and engaged in cutting and removing the timber therefrom for sawmill purposes, and are threatening to enter upon others of said lots, to cut and remove the timber therefrom for the same purposes, and also to construct, maintain, and operate tramroads thereon.   By reason of the wrongful acts mentioned, plaintiffs have and will be damaged in the sum of $1,000 per lot, or other large sum.   The timber on the lots of land mentioned above forms part of a body of timber purchased by the plaintiffs for the sole purpose and with the view of cutting and sawing the same into lumber for their own benefit

and profit, and for the defendants to be permitted to cut and remove the same would result not only in great injury and damage to plaintiffs, as aforesaid, but largely in incalculable injury and damage and irreparable loss to the plaintiffs in carrying out the plans and purposes of their sawmill business. The prayer of the petition was, that plaintiffs be restrained from cutting and removing the timber, or interfering therewith in any way or manner, and from building and operating tramroads upon and through the land, and that plaintiffs have judgment for damages. By an amendment it was alleged that the plaintiffs, in addition to the sums claimed in the original petition, would be further damaged in the loss of profits they would make from the sawing and converting of the timber into lumber, and irreparably damaged in being deprived of timber with which to carry on their mill business. They further alleged that the timber on the lots described in the petition, as well as on others, aggregating 37,730 acres, was purchased with the view and expectation of cutting the same at their mills in Hamilton county, Florida, and upon the faith thereof they have invested $200,000 in sawmills, planing-mills, railroads, and other equipments, located on the Suwanee river below said timber, in the State and county above mentioned, expecting to use the river and such tramroads as they might construct to remove the timber from the lots to their mills, there to be sawed and converted into lumber. It is further alleged that the purpose of the defendants is to cut and remove the timber not only from the lots described in the petition, but from all other lots purchased from R. J. Nelson; and that unless the defendants are enjoined as prayed, the damages to plaintiffs' business and investments will be irreparable.

The defendants filed a demurrer to the petition, on the ground that the trespass alleged is susceptible of perfect pecuniary compensation, and plaintiffs have an adequate remedy at law. Subject to the demurrer, they filed an answer, denying the title of the plaintiffs and setting up the title in themselves, denying that the damages would be irreparable, and setting up by way of cross-action that the plaintiffs have damaged them in a named sum by procuring a restraining order stopping their mills. The defendants admit in their answer " that it is their purpose to cut and remove the timber from the lots described in the original petition, and also from some of the other lots purchased by plaintiffs from

the said R. J. Nelson." · At the hearing plaintiffs introduced in evidence an affidavit of S. G. Culpepper, a portion of which is in the following language: "that he has had extensive experience in connection with the sawmill and lumber business; that he is now connected with the large sawmill and lumber business of the plaintiffs of the above-stated case, and has been for some years past; that he is familiar with all the facts stated not only in the original petition but in the amendment proposed thereto, sworn to by B. F. Camp before deponent on November 15, 1900, and that the same are true; that for plaintiffs to be deprived of the use of the timber purchased by them they would not only lose the profits to be made therefrom but have to shut down their mill; the investments made therein and in connection therewith would be a total loss unless plaintiffs could find a purchaser for second-hand mill, machinery, and appliances, and even then they could not reasonably hope to obtain half-price therefor, or if they could procure timber elsewhere and were able to move, the cost and expense thereof would be nearly equal to the original investment." Do the facts alleged in the petition and amendment, as well as those stated in the foregoing affidavit, make a case for the granting of an injunction? The facts as to the nature of the acts of trespass and the character of the damages were practically undisputed. The defendants did deny in general terms that the damages would be irreparable, but they offered nothing to controvert the statements as to this matter contained in the petition and the affidavit. It is difficult, if not impossible, to ascertain from the record whether the plaintiffs or the defendants are in possession of the timber in controversy. Both claim the right of possession. Both claim to have title to the timber in controversy, and both attach abstracts of their title. The chain of the defendants' title appears, however, from the abstract to be incomplete; and the judge would not have been justified in refusing to enjoin them on the theory that they and not the plaintiffs were the real owners of the property in controversy. He must, therefore, have refused the injunction because he was of opinion that the plaintiffs did not show a "perfect title" to the timber, within the meaning of section 4927 of the Civil Code, and that their allegations and evidence did not show such acts of irreparable damage as to warrant the court in granting the injunction. Under the view we have taken of the case, it is immaterial whether

the plaintiffs had a "perfect title" within the meaning of the section of the code just referred to. They showed a "good title," that is, one which prima facie would have authorized a recovery in ejectment. And while there was abundant evidence to show that the defendants were solvent, the acts of trespass alleged and proved were shown to be irreparable in damages.

For a long time the English Chancery Court declined to grant an injunction to restrain a trespass, and the exercise of this power in such a case is of comparatively modern origin; the earliest case referred to by the law-writers being that of Flamang, decided by Lord Thurlow. See *Moore* v. *Ferrell*, 1 *Ga.* 10; Bisp. Pr. Eq. (6th ed.) § 435. Since that time the practice has been quite common both in England and in this country, but the granting of the writ has, in such cases, been limited to cases where the damages resulting from the acts of trespass would be irremediable or irreparable, either on account of the nature of the acts or the circumstances of the parties. The general rule on the subject has been embodied in our code in the following language: "Equity will not interfere to restrain a trespass, unless the injury is irreparable in damages, or the trespasser is insolvent, or there exist other circumstances which, in the discretion of the court, render the interposition of this writ necessary and proper, among which shall be the avoidance of circuity and multiplicity of actions." Civil Code, § 4916. The expression, "an injury irreparable in damages," appearing in our code as well as in many of the books, has been variously defined. "An injury is irreparable either from its nature, as when the party injured can not be adequately compensated therefor in damages, or when the damages which may result therefrom can not be measured by any certain pecuniary standard." 10 Am. & Eng. Enc. L. (2d ed.) 361. In Gause v. Perkins, 3 Jones' Eq. 179, it was said that an irreparable injury is one "of a peculiar nature, so that compensation in money can not atone for it." This definition is fairly deducible from the earlier cases, but it is entirely too narrow to meet the decisions of more modern times. The tendency of the courts at the beginning was to grant injunctions very sparingly in cases of trespass, but the lapse of a few years has done much to break down the barriers of this conservatism and pave the way for the exercise of greater liberality in this direction. In the light of modern decisions, an irreparable injury may be said to be one which, either

from its nature, or from the circumstances surrounding the person injured, or the financial condition of the person committing the injury, can not be readily, adequately, and completely compensated for with money. "Where the injury complained of is such as to destroy plaintiff's property, or render it entirely worthless for his purposes, it may properly be regarded as irreparable." 1 Beach, Inj. § 35. In Kerr's Injunctions in Equity, *16, *17, it is said "By the term 'irreparable injury' it is not meant that there must be no physical possibility of repairing the injury; all that is meant is, that the injury would be a grievous one, or at least a material one, and not adequately reparable by damages; and by the term 'the inadequacy of the remedy by damages' is meant that the damages obtainable at law are not such a compensation as will in effect, though not *in specie*, place the parties in the position in which they formerly stood. If the act complained of threatens to destroy the subject-matter in question, the case may come within the principle, even though the damages may be capable of being accurately measured."

We quote the following admirable summary of the law from Dr. Pomeroy's Treatise on Equity Jurisprudence, § 1357: "If a trespass to property is a single act, and is temporary in its nature and effects, so that the legal remedy of an action at law for damages is adequate, equity will not interfere. The principle determining the jurisdiction embraces two classes of cases, and may be correctly formulated as follows: 1. If the trespass, although a single act, is or would be destructive, if the injury is or would be irreparable,— that is, if the injury done or threatened is of such a nature that, when accomplished, the property can not be restored to its original condition, or can not be replaced, by means of compensation in money,—then the wrong will be prevented or stopped by injunction. 2. If the trespass is *continuous* in its nature, if repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act *if it stood alone*, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions. In both cases the ultimate criterion is the inadequacy of the legal remedy. All the cases, English and American, have professed to adopt the inadequacy of legal remedies as the test and limit of the injunctive ju-

risdiction; but, in applying this criterion, the modern decisions, with some exceptions among the American authorities, have certainly held the injury to be irreparable and the legal remedy inadequate in many instances and under many circumstances where Chancellor Kent would probably have refused to interfere. It is certain that many trespasses are now enjoined which, if committed, would fall far short of *destroying* the property, or of rendering its restoration to its original condition impossible." The author then says that injunctions are now liberally granted to *prevent* a threatened injury as well as to stop a wrong already being committed. In Lowndes *v.* Bettle, 33 L. J. 451, it was held that where the defendant is in possession and the plaintiff claiming possession seeks to restrain an act of trespass, the general rule is that the injunction will not be granted. Where the plaintiff is in possession, and the defendant is an utter stranger, not claiming under color of right, the tendency of the court is not to grant the injunction, but to leave the plaintiff to his action at law. But where the plaintiff is in possession and seeks to restrain one who claims by an adverse title, the tendency of the court is to grant the injunction. See also, in this connection, Bisp. Pr. Eq. 560 – 561. As before remarked, it is difficult to ascertain from the present record which of the parties is in possession. They both, however, claim under an adverse title, and therefore the present controversy, as to this point, comes more nearly within the last of three cases referred to in the decision just cited. But of the parties making a bona fide claim to the property in dispute, they are in much the same position as the parties in *Johnson* v. *Hall*, 83 *Ga.* 281, where it was said that an injunction could properly have been granted at the instance of either party, to restrain the other from cutting timber.

Coming down to the facts of the present case, what has been the practice of the courts in applications for injunctions to restrain the destruction of timber? "Where growing timber constitutes the principal value of the land, the cutting of it by a trespasser constitutes irreparable injury in the equitable sense, and may properly be restrained by injunction." 2 Beach, Mod. Eq. Jur. § 720. "Where, . . the trespass consists in the cutting of timber, . . going to the destruction of that which is essential to the value of the estate, and the destruction of the estate itself in the character in which it has been enjoyed, a fitting case is presented for relief by

injunction." 1 High, Inj. (3d ed.) § 724, § 671. "The jurisdiction in trespass is often and beneficially exercised to restrain the cutting of timber and destruction of growing trees. Formerly the fact that the title to the premises was in dispute at the time of the application was considered a sufficient reason for refusing relief by injunction against the cutting and removal of timber. But, owing partly to the serious nature of the wrong, and partly to a relaxation of the rule, courts in later times usually grant temporary injunctions in this class of cases pending an adjudication of the legal right between the parties. Especially will relief be granted where the trespass of cutting timber amounts to a destruction of the essential value of the estate in the character in which it has been enjoyed." 1 Spell. Ex. Rel. § 346. In Crockford v. Alexander, 15 Ves. Jr. 138, a case decided in 1808, Lord Eldon granted an injunction to restrain the cutting of timber. In King v. Stuart, 84 Fed. 546, it was held: "Injunction against cutting trees is not limited to shade and ornamental trees, but extends to the cutting and carrying away of trees from forest lands, when the trespass is a continuing one, which would result in denuding the land of valuable timber." In reply to the suggestion that the plaintiffs had an adequate remedy at law, Judge Paul said: "The contention of the defendants is that the plaintiff has a full, adequate, and complete remedy at law for any damage he may suffer by reason of the trespasses of which he complains; that this remedy is an action at law for damages, to be measured by the value of the timber removed. That this was the doctrine at common law is admitted, but that its strictness has been greatly modified by the decisions of courts of equity in England and in this country is too well established to admit of discussion." In discussing what is meant by an adequate remedy, the learned judge quotes the following from a note to section 1357 in Pomeroy's Equity Jurisprudence: "The legal remedy is not adequate simply because a recovery of pecuniary damages is possible. It is only adequate when the injured party can, by one action at law, recover damages which constitute a complete and certain relief for the whole wrong,—a remedy virtually as efficient as that given by a court of equity. This conclusion is sustained by the consensus of modern decisions of the highest authority; although it can not be claimed that the cases are unanimous in its acceptance." In Buskirk v. King, 72 Fed. 22,

Circuit Judge Goff held that an injunction would be granted to re-strain the cutting and removal of large quantities of timber during such time as was necessary to try the question of title, such an act of trespass being one which is "irremediable, and destroys the substance of the property." And numerous authorities are cited to sustain the decision. A similar conclusion was reached by District Judge Wellborn in United States *v.* Guglard, 79 Fed. 21. In Railroad Company *v.* Cunningham, 103 Fed. 708, Judge Hanford granted an injunction to restrain the defendant from pasturing his sheep upon the lands of the plaintiff, which were valuable only for grazing purposes; such an act of trespass being classed with mining lands, digging the soil, and cutting down trees. In the case of Erhardt *v.* Boaro, 113 U. S. 539, Mr. Justice Field used the following language: "It is now a common practice in cases where irremediable mischief is being done or threatened, going to the destruction of the substance of the estate, such as the extracting of ores from a mine, or the cutting down of timber, or the removal of coal, to issue an injunction, though the title to the premises be in litigation."

In Brown *v.* Solary, 19 So. 161, the Supreme Court of Florida held that the mining and taking of phosphate rock from the soil of land chiefly valuable on account of the phosphate amounts to a destruction of the estate in the character in which it has been enjoyed, and that the injury resulting therefrom is of an irreparable nature.. In Butman *v.* James, 34 Minn. 547, it was held: "When growing timber constitutes the principal value of land, the cutting thereof is irreparable injury in the equitable sense, and may properly be restrained by injunction." In Iron Company *v.* Reymert, 45 N. Y. 703, the Court of Appeals held: "Mines, quarries, and timber are protected by injunction, upon the ground that injuries to and depredations upon them are, or may cause, irreparable damage, and with a view to prevent multiplicity of suits; nor is it necessary that the plaintiff's rights should be first established in an action at law." In Shreve *v.* Black, 4 N. J. Eq. 177, it was ruled: "Cutting off the timber from a tract of woodland, valuable chiefly for the wood upon it, is an irreparable injury." In De La Croix *v.* Villere, 11 La. Ann. 39, it was held that "The destruction of forest and other trees is an irreparable injury from which parties may be restrained by injunction." In addition to the foregoing, the fol-

lowing authorities sustain the conclusion we have reached: Davis v. Reed, 14 Md. 152; Courthope v. Mapplesden, 10 Ves. Jr. 290; Itasca v. Schroeder (Ill.), 55 N. E. 50; Thatcher v. Humble, 67 Ind. 444; Pohlman v. Lohmeyer (Neb.), 83 N. W. 201; Livingston v. Livingston, 6 Johns. Ch. 497; Smith v. Reneau, 59 Vt. 232; Hake v. Judge (La.), 26 So. 769; Musch v. Burkhart (Iowa), 12 L. R. A. 484; Fulton v. Harman, 44 Md. 251. It is to be conceded that the cases are not entirely uniform, even those of later years. Among those holding the contrary view are Carney v. Hadley (Fla.), 22 L. R. A. 234 (6); Heaney v. Com. Co., 27 Pac. 379; Gause v. Perkins, 3 Jones' Eq. 177; Sharpe v. Loane (N. C.), 32 S. E. 318; Leininger's App., 106 Pa. St. 398; Lazzell v. Garlow (W. Va.), 30 S. E. 171; Cowles v. Shaw, 2 Iowa, 496; Powell v. Rawlings, 38 Md. 239; Thomas v. Jones, 32 Ala. 723.

Where large numbers of growing trees are felled and carried away, the owners of these trees have no way of ascertaining the quantity of lumber made from the trees, and no accurate way of measuring their value. This could not be done unless all timber trees are worth the same. This can hardly be so. But the value of a tree for timber would, it would seem, depend upon the quantity of lumber that could be cut from it. The present case, however, presents a stronger case for injunction than the ordinary one of cutting timber. The plaintiffs allege that they are the owners of large bodies of timber; that they have erected sawmills, planing-mills, and equipment, and made large investments in the business, aggregating hundreds of thousands of dollars. They allege that if the timber is removed they will be irreparably damaged, because they will lose the large investments they have made, their machinery and equipment would be practically worthless, and they would moreover lose the profits which would accrue to them from the selling of the lumber. They contend that under these facts, even conceding the defendants' solvency, no adequate compensation could be had in money. On the question of loss of profits the case of Wadsworth v. Goree, 10 So. 848, is cited, where it was held, in effect, that as future profits would be classed as remote and speculative at law, equity would restrain an act which would result in the loss of such profits. That case was very similar to the present case, and in that the lower court was reversed for refusing to grant an injunction. In this State future profits, which are ascertainable with a

reasonable degree of certainty, can be considered by the jury in esti-
mating the damage resulting from an act of trespass; but in no case
of trespass could profits be recovered as such, and in cases where
they are too remote and speculative they could not even be consid-
ered in estimating the damage.    See *Bass* v. *West*, 110 *Ga.* 698.
The rule laid down in the Alabama case would be applicable here.
But, aside from this, the plaintiffs make a case where a complete
and adequate remedy is not available at law.    Who can say, with
any degree of certainty, what the damages would be to the plaintiffs
in their business, if the defendants continue their trespasses until
they denude the land of the timber; and this they allege with the
utmost assurance in their answer they purpose doing.    Equity will
restrain threatened acts of trespass as well as those being committed;
and when a defendant comes into court and declares, in effect, that
if let alone he will continue to go upon the land and cut off the
timber, he should, in a proper case, be prevented by the strong arm
of the law from carrying this threat into execution.    By the express
terms of our statute equity will enjoin a continuing trespass in or-
der to avoid a multiplicity of suits.    In addition to this, the dam-
age resulting to the plaintiffs from the construction and operation
by the defendants of tramroads, which it is alleged and not de-
nied they intend, can not be readily and completely estimated in
money.    Viewing the case as a whole, we are satisfied a proper
case was made for an injunction to issue until the question of title
could be settled.

The views above expressed will be found not to be in conflict with
prior decisions of this court.    On the contrary, they are rather in
harmony therewith.    In *Moore* v. *Ferrell*, 1 *Ga.* 7, it was ruled that
" Trespass will be enjoined, in all cases, where from the nature of
the trespass, or the circumstances of the parties, the remedy at law
can not be full and complete."    In that case this court reversed the
lower court for dissolving an injunction issued to restrain the de-
fendants from digging gold from a mine.    In the opinion " destruc-
tion of timber" is cited as an instance where the exercise of this
power of the court would be justifiable.    In *Water-Lot Co.* v. *Bucks*,
5 *Ga.* 315, 320, Judge Lumpkin recognizes that injunctions will be
granted to restrain the cutting of timber, the mining of ore, and the
like.    In *Hatcher* v. *Hampton*, 7 *Ga.* 49, it was held that " The
mere allegation that the defendant is felling the timber of the com-

plainant is not enough, without further averment as to some peculiar value of the timber for some particular purpose." That this ruling is not in conflict with the present decision is shown conclusively by the following language of Judge Lumpkin in the opinion: "If the bill alleged, for instance, that a sawmill had been erected on the land, or in the vicinity, which rendered this pine timber peculiarly valuable for lumber, I will not say that this would not justify the interposition of a court of equity. But no such case is made. It is a mere trespass, and, for anything that appears, abundantly capable of compensation in damages, by ordinary suit at common law." In *Justices* v. *Plank Road Co.*, 11 *Ga.* 246, an injunction was sought to restrain the defendants from removing a toll-gate on a line of road, which the plaintiffs had constructed under legislative permission. The injunction was granted, and one of the main grounds of affirmance by this court was that the injury complained of would be irreparable in damages, on the theory that loss of profits, the income of the road, and the value of the same would be difficult if not impossible of proof, and the remedy at law would be "uncertain and incomplete." In *Griffin* v. *Sketoe*, 30 *Ga.* 300, it was held that injunction was the proper remedy to stay waste in cutting down and selling from the lot the valuable timber thereof. See also *Powell* v. *Cheshire*, 70 *Ga.* 357; *Mayo* v. *McPhaul*, 71 *Ga.* 758. There is nothing in the case of *Ocmulgee Lumber Co.* v. *Mitchell*, 112 *Ga.* 528, which conflicts with the ruling now made. In that case each act of trespass was distinctly alleged, and the amount of damages for each act was distinctly stated. It clearly appeared from the allegations, not only that the injury was not irreparable in damages, but it was shown in each instance exactly how much would repair the injury.

4. The defendants filed a cross-bill of exceptions, in which they complained of the admission by the court of a certain affidavit. Under the view we have taken of the case, if any error was committed in admitting this evidence, it was not prejudicial to the defendants, as there was nothing contained in this affidavit bearing upon what we have treated as the controlling question in the case.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. All the Justices concurring, except Simmons, C. J., absent.*