MARTIN et al. v. HECKMAN et al.

(First Division. Juneau. May Term, 1901.)

No. 1,099.

1. PUBLIC LANDS—TIDE LANDS—INJUNCTION—WHARVES.

An upland owner may extend his wharf across tide lands to deep water at right angles to his shore line, but may not deprive other upland owners of an equal privilege. The defendants erected their wharf on diagonal lines and at an acute angle from their shore line, thereby crossing the line of approach from deep water to plaintiffs' land. A perpetual injunction was granted.

2. TRIAL—FINDINGS OF FACT—CONCLUSIONS OF LAW.

In this court, *held*, that findings of fact and conclusions of law are not of such binding force as to affect adversely the rights of the defendants.

8. PUBLIC LANDS—TIDE LANDS—INJUNCTION—WHARVES.

Where different persons own portions of the upland shore line of a small semicircular bay, each party can have only an equitable portion of the approaches to deep water, and a court of equity will protect their several rights by injunction.

Suit to Enjoin the Erection of a Wharf in Front of Plaintiffs' Property. Injunction granted.

C. K. Delaney, for plaintiffs.

Oscar Foote and Winn & Shackleford, for defendants.

BROWN, District Judge. In the consideration of the case of Carl A. Sutter et al. v. Heckman and the Alaska Packers' Association as to the fishing rights of the complainants, the court has practically passed upon every material question raised in this case as to the right of the complainants to extend their wharf without being hindered by the respondents.

The evidence clearly shows that the complainants were in the actual possession of the uplands adjoining the tide waters

of Tongass Narrows for a long period of time prior to the respondents having secured any rights, possessory or otherwise, in or to the said lands. But, for the purposes of this case, let it be considered that the rights of the complainants and respondents were contemporary, and that their possessory rights and acts of possession were initiated at the same time. The respondents have offered in evidence their plat and map, showing the precise lands that are occupied and held by them on said tide lands, and they describe certain lots that have been surveyed as a part of a town site, and said map shows as well the lots and lands occupied by the complainants. Under the law, if the right of each party to the uplands were equal, the respondents could construct a wharf in front of their upland holdings in a direct line therefrom to the deep water of Tongass Narrows, but they would have no right, even if said land had been patented, and the respondents had an unquestioned right to their holdings, to cross the front of any other man's holdings bordering upon the said tide waters. The respondents' right to wharfage extends from the shore line out to deep water, on a line running nearly at right angles with the general shore line; but they may not cross, nor will they be permitted to cross or occupy, any of the tide flats, or an inequitable proportion thereof, so as to deprive other upland holders adjoining them of the same equitable right to reach deep water over the said tide flats. The complainants have the same right as the respondents to extend the line of their wharf out to deep water, and in such manner as they choose, on lines of their shore holdings.

The respondents, by constructing their wharf on diagonal lines, and at an acute angle with the shore line across the frontage of other upland holders, and particularly across the frontage of lands occupied and possessed by these complainants, have wrongfully and unlawfully interfered with plain-

tiffs' right, and cannot, therefore, be permitted to continue their wharf and floats as at present located and constructed. That it is the complainants' right to have them restrained and enjoined from maintaining their wharf as at present located, and from extending the same to a point where they cross in front of complainants' upland holdings, seems to be supported by ample authority.

The evidence in this case seems to indicate that the shore line of Tongass Narrows is somewhat semicircular, and that, to reach deep water from certain portions thereof, it is necessary to run lines diagonal to the side lines of the lots as surveyed in the town site; and that, while the respondents are entitled to an equitable proportion of the tide flats, so as to permit them to reach deep water, they may not so build or construct their wharf as to interfere with intervening upland holders, nor should they be permitted to extend their wharf so far out into deep water as to make it inconvenient or impracticable for vessels coming into said Tongass Narrows to approach plaintiffs' wharf.

The temporary injunction heretofore granted in this case, restraining the respondents from extending or continuing their wharf as at present located and constructed, will therefore be made perpetual.

## On Petition of Defendants for Modification of Decree.

### (May, 1901.)

I have examined the petition of defendants in this case presented to the court for the purpose of securing some amendments to the decree heretofore entered herein. The application for the amendment and the claimed error seem to be based wholly upon alleged errors of findings of fact and conclusions of law that accompanied the decree. The findings of fact and conclusions of law were presented to the court by the attorneys for the plaintiffs in the case, and,

while they go somewhat further than the decision of the court on file seems to contemplate, I am of the opinion that, as to the matters wherein the error is claimed to have occurred, such findings are wholly outside of the issues involved under the pleadings in the case, and are, in the main, surplusage. In truth, findings of fact and conclusions of law are confined wholly to actions at law, and were unheard of in proceedings in equity, so far as I am informed, until required by the express language of the Civil Code. The decree in equity settled all matters in controversy between the parties. Unless, by express requirement of the Oregon Code, these findings of fact and conclusions of law were required in an equitable action, I am of the opinion that all such findings and conclusions in this case form no part of the decree, and are without force and effect. They were signed by the court at the time, as a part of the decree to be entered, under the same impression that I now entertain, viz., that the Oregon Code does not, in terms, require the court in suits in equity to make any such findings. The only reference to such findings I am able to find in Hill's Annotated Codes is found in section 396, p. 412, vol. I, compilation of 1892, which reads as follows:

"The provisions of title 1 of chapter 2, of this code, shall apply to suits, except as in this title otherwise or specially provided; but issues of law and fact shall be tried by the court, unless referred."

Referring to title I of chapter 2 (section 178 of said compilation), I find the following: "An issue of law shall be tried by the court, unless referred as provided in title VI of chapter 2;" which is the same provision, in substance, covered by section 396, before referred to. But this section further provides: "An issue of fact shall be tried by a jury, unless tried by the court or referred, as provided in titles V and VI of chapter 2."

Whatever may be the provisions of titles 5 and 6 of chapter 2, it can hardly be said that they form a part of title 1, which is in force in suits by the express terms of section 396. However, title 5 of chapter 2 (section 218) provides for a waiver of a trial by jury and a trial by the court, which clearly could not be in force in suits, because, in all proceedings in courts of equity, juries are dispensed with, unless called for a specific purpose to pass upon some question of fact that may be formulated by the court to submit to the jury. So that in suits the waiver of a jury, required in actions at law, could never be required, and was never intended to be required, by the Oregon Code. Section 219 provides:

"Upon the trial of an issue of facts by the court, its decision shall be given in writing, and filed with the clerk during the term, or within twenty days thereafter. The decision shall state the facts found and the conclusions of law separately, without argument or reason therefor."

It also provides that the decision shall be entered in the journal of the court, etc. This requirement is clearly intended to apply to law actions, and never to affect the proceedings of courts in equity suits. Had the Legislature of Oregon intended titles 5 and 6, or either of them, to apply to suits, express reference would have been made to these titles in section 396, or some other section of the Oregon Code treating the subject of suits. I am clearly of the opinion that cross-references in title 1 of chapter 2 were not put in force in suits by section 396 of title 1 of chapter 5, before referred to. I therefore conclude that these special findings of fact and conclusions of law are not of such binding force as to affect adversely the rights of the defendants in this case.

It is to be remembered that this suit was brought to enjoin the defendants from erecting a certain structure that

was calculated to prevent the plaintiffs from the proper com-
pletion of a wharf then in process of construction by them.
The defendants answer and set up some affirmative claims
and rights of their own in and to certain lands bordering on
Tongass Narrows, and neither their answer nor the supple-
mental answer definitely define the points to which the plain-
tiffs sought to build their wharf, or the point to which de-
fendants undertook to build their structure, which, in their
answer, they claim was intended in part for the purpose of
a wharf to be further constructed by them.   Both the com-
plaint and the answer stop as soon as they allege that each
is trying to construct his wharf from the uplands to the deep-
waters of Tongass Narrows.   To what depth of "deep water"
they seek to go is impossible to determine from the pleadings.
To what length the plaintiffs seek to extend their wharf the
complaint itself fails definitely to inform us.   The court was
satisfied from the evidence in the case—is satisfied now—
that the defendants were encroaching upon the rights of
the plaintiffs with their structure, and were erecting it in
such a manner, and so placing floats around it, as to prevent
the plaintiffs from completing their wharf according to their
right, and in the manner originally intended by them.

On the maps offered in evidence it appears that the end
of the plaintiffs' wharf, at its furthest extent, reaches a depth
of 26 feet of water, and the point of the defendants' structure
furthest extended, and the float attached thereto, reaches a
depth on one side of 32 feet and 34 feet on the other, and
that the furthest point—being the corner of the float extended
furthest into the narrows—reaches the depth of 40 feet.   The
plaintiffs' wharf, called the "Strong & Johnson Wharf,"
seems to be in part constructed over very shallow water, only
the most extended point reaching to a depth of 26 feet.   What
should be settled as "deep water" is a matter difficult to de-
termine.   The greatest depth of water drawn by any ship.

attempting to land at these wharves would certainly be suffi-
cient for all wharf purposes. Of the greatest depth drawn
by ocean ships landing or attempting to land at these points
we are not fully advised by the testimony; but, so far as I
recall it, none reached a depth of 30 feet. If the court is
right upon this point, the extension of the Strong & Johnson
wharf to a point where it would reach the present structure
of the defendants would bring it to a depth of 30 or 32 feet.
But extending it that far would interfere or displace to some
extent the present structure of the defendants. Certainly
the court would not permit the plaintiffs to extend their
wharf indefinitely, and the decree of the court could not be
construed to mean that they could, but that they might ex-
tend it to deep water; and by deep water is meant, in con-
nection with wharves, to such depth as will accommodate
seagoing craft that might have occasion to stop at these
wharves. The court, in referring to "Front street" in the
findings, as said street is delineated on the map, intended
thereby to indicate a point to which the plaintiffs might go,
and that the defendants could not be permitted to meddle
with or prevent. In referring to intervening lands, the court
said in its decision in this matter that the line of high tide
was somewhat circular in form, and that the parties having
upland holdings could proceed therefrom in direct lines from
their holdings to the deep water. Where the shore line is
semicircular in form, the same bending inward from the sea,
each party holding land bordering upon the tide water can
only have an equitable portion of the approaches to deep
water. The right of the defendants in this case to an ap-
proach to deep water is unquestioned; but should they con-
struct their approach or their wharf over intervening equi-
ties of other owners, the court intimated in its decision and
finding that they would be violating the rights of others, and,

if they encroached upon the rights of these plaintiffs, they would be violating their rights.

If the decree of the court is somewhat uncertain in terms, the error is not the error of the court, but the error of the pleadings in failing to properly detail the issues between the parties as to their respective rights. The court did not attempt, nor is it required, under the issues in this case, to determine the rights of the several parties, save and except as to the single question as to whether or not the defendants were in fact encroaching upon the rights of the plaintiffs, and should, therefore, be restrained. Further than that the court attempted to settle nothing in this case, except what might be in its nature advisory to the defendants in their future operations in attempting to wharf out to deep water. In following their present line to deep water, they would prevent persons having rights in lands between their own and plaintiffs' from reaching deep water at all. Therefore, in pursuing their efforts to wharf out to deep water, the court reminds them that they should pay reasonable regard to the equities and rights of others, and by so doing they can preserve their own rights, and construct their wharf without trouble or interference from any. I therefore decline to open up the decree and to make any changes therein; but I attach to the decision I now file the former decision of the court in the premises, that the same, as a whole, may remain upon the files of the court as a clearer and better guide to the parties in their attempt to enforce their several rights under the decree. The petition to open the decree is, therefore, denied.

The motion to modify has apparently been abandoned by the defendants by their filing of petition for modification, but the motion is also denied.