## COPPER RIVER LUMBER CO. v. HUMPHREYS.

(Third Division.   Valdez.   February 21, 1903.)

### No. 9.

PUBLIC LANDS.

Plaintiff claimed, used, and actually occupied a small tract of public land for purposes of manufacturing and sawing lumber. Defendant entered upon a portion thereof not covered by plaintiff's structures, marked it with stakes, and began the erection of a warehouse. *Held*, that plaintiff was entitled to the exclusive possession of the whole tract, under section 12, of the act of Congress of March 3, 1891 (26 Stat. 1100, c. 561 [U. S. Comp. St. 1901, p. 1467]), for purposes of trade and manufactures.

The land in controversy in this action lies in front of the town of Valdez, and consists of a tract extending from Broadway to Reservation avenue and from lot A abutting on Front street to deep water on Valdez Bay.   The tract was located previous to any of the times in question between plaintiff and defendant by Crawford and Rutherford, doing business as the Valdez Mill Company.   They built a sawmill on the tract, and occupied it for a year or more prior to August 23, 1902, when the tract of land, together with the mill and all of its approaches, was sold to H. F. Robinson, who bought it for the plaintiff, and to whom he conveyed it by deed on October 4, 1902.   It appears from the evidence in the case that plaintiff's mill occupies the land

along the extension of Reservation avenue from deep water to lot A in the town site of Valdez. It extends easterly along the line of lot A to Broadway, leaving a space between the mill and Broadway which was used for the approach of teams for lumber, for piling sawdust and other products of the mill.

About January 5, 1903, the defendant set stakes at the four corners of a tract within plaintiff's millyard, and claimed a lot 100 feet square, alleging that he intended to use it for warehouse purposes. He attempted to inclose the land, and put some building timber there for the purpose of erecting the warehouse mentioned. In view of the damage alleged to result from the loss of this property in its business, and that defendant is alleged to be insolvent and unable to respond in damages, the plaintiff applied to the court for an injunction in a suit to quiet his title to the land in controversy.

N. V. Harlan and John Y. Ostrander, for plaintiff.

F. M. Brown, for defendant.

WICKERSHAM, District Judge. The defendant's theory of this case is not quite apparent. No statement is made in his pleading or by his counsel by which the court may ascertain which of the various public land laws he claims the right of possession under. It must be presumed, however, from the fact that he sought to build a warehouse upon the land, that he is attempting to claim it under the same law under which the plaintiff claims for trade and manufactures.

The twelfth section of the act of Congress approved March 3, 1891, entitled "An act to repeal timber culture laws, and for other purposes," provides that any citizen of the United States over 21 years of age—

"Now or hereafter in possession of and occupying public lands in Alaska for the purpose of trade and manufactures, may purchase not

to exceed one hundred and sixty acres, to be taken as near as practicable in a square form, of such land at two dollars and fifty cents per acre: Provided, that in case more than one person, association, or corporation shall claim the same tract of land the person, association, or corporation having the prior claim by reason of possession and continued occupation shall be entitled to purchase the same." 26 Stat. 1100, c. 561 [U. S. Comp. St. 1901, p. 1467].

It is provided that any citizen—

"Hereafter in possession of and occupying public lands in the District of Alaska in good faith for the purpose of trade, manufactures, or other productive industry, may each purchase one claim only not exceeding eighty acres of such land for any one person, association, or corporation at two dollars and fifty cents per acre, upon submission of proof that said area embraces improvements of the claimant and is needed in the prosecution of such trade, manufacture, or other productive industry, such tract of land not to include mineral or coal lands, and ingress and egress shall be reserved to the public on the waters of all streams, whether navigable or otherwise; Provided, further, that there shall be reserved by the United States a space of eighty rods in width between tracts sold or entered under the provisions of this act on lands abutting on any navigable stream, inlet, gulf, bay, or seashore, etc. * * * Provided, further, That in case more than one person, association, or corporation having the prior claim, by reason of actual possession, and continued occupation in good faith, shall be entitled to purchase the same, but where several persons are or may be so possessed of parts of the tract applied for the same shall be awarded to them according to their respective interests."

Under this statute a citizen may use and occupy a tract of the public domain not to exceed 80 acres in area for the purpose of trade, manufactures, or other productive industry. Whenever he shall have marked out said tract, and shall have erected his mill or other machinery for trade and manufactures upon any part of it, he may hold the entire tract under this law. It is not necessary that he shall cover the entire tract claimed by him with structures, nor is it necessary for him to fence it to maintain his exclusive possession thereof.

It is claimed on behalf of the defendant that there was no such marking of the boundaries in this case as would exclude the defendant from claiming the land as a portion of the public domain; his theory being that there was no segregation of any particular tract. The facts appearing in evidence are that, when Crawford and Rutherford originally located this land for milling purposes, they set stakes corresponding to the corners of Broadway and Front streets and Front and Reservation streets, and the evidence is that they set another stake 300 feet toward deep water along the line of Broadway. These stakes inclosed the tract in dispute in this case. I am inclined, however, to hold, that the fact that both Broadway and Reservation avenue are extended along each side of this tract, and that Broadway is used by the general public along the side where the land in dispute lies, is a sufficient boundary to segregate the land in dispute from the public domain. Defendant himself recognized such boundary for his 100 feet front extending from Broadway back into plaintiff's lumber yard. He recognized Broadway as the boundary, the plaintiff has always recognized it as such, and no reason is suggested why the court should not so recognize it. It is my judgment that this land had been effectually segregated from the public domain by Crawford and Rutherford, doing business as the Valdez Milling Company; that it was conveyed to the plaintiff, who used the same, and who was in the sole and exclusive possession thereof, using it for the purpose of trade and manufactures, when the defendant trespassed upon a portion of it; that plaintiff's possession was then sufficient to hold the entire tract; and that defendant could acquire no rights by his trespass thereon.

There is some contention by the defendant that the land which he claims is above the ordinary high tide. It would make no difference, however, under the circumstances in

this case, whether it was above or below ordinary high tide. If it is above high tide, the facts bring it fairly within the statute in relation to the disposal of lands for trade and manufactures, and, if it is below, the circumstances bring it clearly within the rule that the owner of uplands cannot be deprived of the use of the tideland in front of his upland holdings by a mere trespasser, and that he may construct wharves, mills, and approaches to the sea from his upland, and will be protected in such right by the injunctive process of the court. Lewis v. Johnson, 1 Alaska, 529; Sutter v. Heckman, 1 Alaska, 81; Martin v. Heckman, 1 Alaska, 165.