## STEELE v. TANANA MINES RY. CO.

(Third Division. Fairbanks. June 24, 1905.)

No. 302.

1. PUBLIC LANDS—RIGHT OF WAY FOR RAILROAD.

A railroad acquires no right of way over the public lands in Alaska until the preliminary survey and plat thereof shall have been made. Such survey and plat reserves the rights of the company for one year.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Public Lands, §§ 232–234.]

2. SAME.

Upon making the final survey and filing the definite map of location for a railroad across the public lands in Alaska, the right of way fixed thereby excludes any further disposition of the lands except subject to such right of way.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Public Lands, § 234.]

3. SAME.

The grant of right of way to railroads across the public lands in Alaska takes effect only after the lines have been located on the ground; the preliminary lines reserve for one year, the definite lines reserve permanently.

4. SAME—HOMESTEAD—MINES AND MINERALS.

Where it is attempted to change the preliminary lines of a railroad right of way in Alaska, so that the same shall for the first time be located upon a homestead entry or placer mining location, it can only be done with the consent of the homesteader or placer mine locator or upon condemnation proceedings.

5. MINES AND MINERALS—HOMESTEAD.

A placer mining claim cannot be located over a valid homestead entry in Alaska until the homestead entry has been contested and canceled by the land office.

6. EMINENT DOMAIN—COMPENSATION TO OWNER—RIGHT OF WAY—PREREQUISITE TO POSSESSION.

The general rule is that an injunction will issue to prevent a railroad company from taking possession of a right of way and. constructing its road over private property without first making payment to the owner for the property taken.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, § 768.]

7. SAME—CONSTRUCTION OF WORKS.

An injunction will not issue to restrain a railroad company from completing its bridge across a nonnavigable slough claimed by plaintiff as a part of his placer mining location, where the title to the land is in dispute and is doubtful, and where, in addition, no injury is shown to the claim.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, §§ 769–773.]

The pleadings and evidence show that one C. H. Heine entered Garden Island, lying opposite the town of Fairbanks, Alaska, as a homestead on the 25th day of April, 1903, and that said entry was at all times mentioned in this case and now is a valid homestead entry. This island is bounded on the south and west by the Chena river, a navigable stream, and on the east and north by a dry slough, wherein there is a current from the Chena river only at times of high water. Archie Burns

had, prior to the time when either plaintiff or defendant claim to have acquired rights in any part of the premises, also entered a tract of land as a homestead bounded on its southerly line by this same nonnavigable slough.

On November 3, 1904, plaintiff located a placer mining claim so as to cover a portion of Heine's Garden Island homestead, and all of the upper part of the dry slough, and reaching to Burns' stakes on the north bank of the slough.

Prior to plaintiff's location of the mining claim, the defendant had made a preliminary survey for its line of railroad into the center of Garden Island, which preliminary line of survey crossed the slough below plaintiff's claim. Thereafter, and after November 3, 1904, defendant made its permanent survey and location, which differed from its preliminary survey, and crossed the slough some 500 feet farther up stream and upon plaintiff's mining claim. At that point the slough is about 100 feet wide, and defendant's road crosses on a wooden railroad bridge of hewn timbers. No fences or barriers are erected, and the evidence does not show that any indications of gold exist at this point. Prior to defendant's entry it obtained quitclaim deeds from both Heine and Burns for the right of way over the land, and entered peaceably and under color of such prior homestead title, as well as under its claim of railway right of way on public lands. The evidence in support of the mineral character of the claim consists in the statement of witnesses that a few colors and prospects of gold dust were extracted from the upper end of the gravel deposits in the slough by plaintiff and another working for him.

Plaintiff prays for an injunction to prevent defendant from further work in the completion of the line of railroad across his alleged mining claim.

Pratt & Johanson, for plaintiff.

Carr & Nye, for defendant.

WICKERSHAM, District Judge. The defendant is a corporation organized under the laws of the state of Washington, and engaged in the construction of a railroad from Chena to Fairbanks, in the District of Alaska. It claims a right of way over the lands of the United States for railway, station, and terminal purposes, under an act of Congress entitled "An act extending the homestead laws and providing for right of way for railroads in the District of Alaska, and for other purposes," approved May 14, 1898, c. 299, 30 Stat. 409 [U. S. Comp. St. 1901, p. 1412].

Defendant contends that this constitutes a grant in præsenti to the defendant railroad, and that since its passage the locators of all lands in Alaska take their claims subject to the reservation contained therein of a right of way across them for railroads. Section 2 of the act provides: "That the right of way through lands of the United States in the District of Alaska is hereby granted to any railroad company," etc. 30 Stat. 409 [U. S. Comp. St. 1901, p. 1575]. It will be noticed from the reading of the act that this grant in its general character differs materially from the Pacific railway grants, in that no terminii are mentioned, nor is any land grant given along any proposed or fixed route to any particular company; it is a general grant of a right of way to any railroad company which shall afterwards comply with its terms, and locate and construct a railroad within the District of Alaska. It is my judgment that the provisions of the act sufficiently answer the inquiry of the defendant.

Section 4 of the act provides:

"That any such company by filing with the Secretary of the Interior a preliminary actual survey and plat of its proposed route, shall have the right at any time within one year thereafter to file the map and profile of definite location provided for in this act, and such preliminary survey and plat shall, during the said period of one year from the time of filing the same, have the effect to render all the lands on which said preliminary survey and plat shall pass

subject to such right of way." 30 Stat. 410 [U. S. Comp. St. 1901, p. 1577].

Section 5 provides:

"That any company desiring to secure the benefits of this act shall, within twelve months after filing the preliminary map of location of its road as hereinbefore prescribed, whether upon surveyed or unsurveyed lands, file with the register of the land office for the district where such land is located a map and profile of at least a twenty-mile section of its road or a profile of its entire road if less than twenty miles, as definitely fixed, and shall thereafter each year definitely locate and file a map of such location as aforesaid of not less than twenty miles additional of its line of road until the entire road has been thus definitely located, and upon approval thereof by the Secretary of the Interior the same shall be noted upon the records of said office, and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way." 30 Stat. 410 [U. S. Comp. St. 1901, p. 1578].

It seems clear from these provisions that the railroad acquires no right of way until the preliminary survey and plat shall have been made and probably filed, and that such preliminary survey and plat reserves the rights of the company for one year thereafter, and protects the company during the year within which it has to make its definite location only in so far as the right of way is fixed by the preliminary survey and plat. Upon making and filing the definite map of location, the right of way fixed therein excludes any further disposition of the land except subject to that right of way. The most that can be claimed for the first provision is that it is a reservation for a year of the right of way noted thereon, and that any private claims located thereon after the preliminary plat has been made and filed shall be considered subject thereto. The grant takes effect, under the act, only after the lines have been located upon the ground; the preliminary lines reserve for one year, the definite lines reserve permanently. There is no reservation at any time until one or the other of these surveys has been made, and the plat thereof filed in the land office.

In the case at bar the homestead claims of Heine and Burns were entered prior to either of these surveys. The placer mining claim of the plaintiff was located after the preliminary survey, but it appears that at the point where the preliminary survey now crosses the nonnavigable slough there was no preliminary survey or plat made or filed at the time of the location of the mining claim. At the time the preliminary survey was made the rights of the placer mining locator, if he had any, were fixed, and it was made subject thereto. Where it is attempted to change the preliminary lines of a railroad right of way so that the same shall for the first time be located upon a homestead entry or placer mining location, it can only be done with the consent of the homesteader or placer mine locator, or upon condemnation proceedings.

Section 4 of the act of 1898 provides a method for condemning rights of way over private lands and placer claims on lands belonging to the United States, in accordance with the act of Congress approved July 2, 1864 (chapter 215, 13 Stat. 356); but counsel for plaintiff urges that this provision has been repealed by chapter 22 of the Civil Code of Alaska, passed and approved June 6, 1900 (chapter 786, 31 Stat. 522), providing for condemning private property for railroad purposes. This is an interesting but moot question, since there is no attempt yet made to condemn this land under either law, and the court will not say in advance of the real question which of two laws should be followed.

This court has just decided in the case of Heine v. Roth, 2 Alaska, 416, that a placer mining claim cannot be located over a valid homestead entry until after contest in the United States land office and the homestead entry has been canceled because the land is mineral in character. This decision involved Garden Island and the very homestead entry upon and over which plaintiff claims to have located his placer mining claim. For the reasons given in that case and upon the record

in this it follows that the subsequent location of plaintiff's placer claim upon the valid prior homestead entry of Heine, and so far as it conflicts with it and the prior Burns homestead entry, is void, and will not support an application for an injunction. This leaves for consideration only that portion of his mining claim which lies within the banks of the nonnavigable slough, and which is shown to be outside of these homesteads as marked by stakes on the ground, but between them. The defendant, prior to its entry, location, and construction of its line of road upon these homesteads, obtained the consent of both the homesteaders, by quitclaim deed to the right of way. It is my judgment that this gave the defendant such a title to the land in conflict between the homestead claimant and the mineral claimant as precludes the mineral claimant (the plaintiff herein) from any right to restrain the building of the road upon that portion of the homestead except that portion within the banks of the nonnavigable slough. This leaves the interesting question as to how far the boundary line between these two homesteads reaches into the nonnavigable stream, if at all.

Section 682 of the Code of Civil Procedure of Alaska, found in the act of June 6, 1900 (chapter 786, 31 Stat. 440), provides that:

"The following are the rules for construing the descriptive part of a conveyance of real property when the construction is doubtful and there are no other sufficient circumstances to determine it:   *   *   * Fourth. When a road or stream of water not navigable is the boundary, the rights of the grantor to the middle of the road or the thread of the stream are included in the conveyance except where the road or bed of the stream is held under another title."

It appears from the evidence that Garden Island is bounded on its south and west sides by the navigable waters of the Chena river, and on the east and north sides by this nonnavigable slough, a branch of the Chena river, and which is filled with running water only in times of high water. The homesteads were located prior to any attempt to locate this

placer mining claim, and, under the rule laid down by the statute, the defendant's title seems to go to the thread or center of the stream, although the private survey made by the homesteaders locates the boundary lines by stakes upon the bank.

. The only evidence of the mineral character of this land is the affidavit of the plaintiff and one of his witnesses that at ·the upper end of the slough, several hundred feet away from where the railroad crosses it, they found colors or prospects of gold by panning the gravel in the bed of the stream. The surrounding lands are not considered to be mineral lands; they are in the wide flat valley of the Chena and Tanana rivers. There is no presumption in favor of its being mineral land; the presumption, if any, is in favor of it being agricultural land. It is not shown that the plaintiff was in possession of the mining claim when the railroad was being constructed across the slough, or that the ground which it crosses is mineral in character. There is a fair dispute as to the ownership of the ground at the point where the railroad crosses the slough. The defendant has a deed from both homesteaders for the opposite banks at that point, and probably, under the statute, to the thread of the stream. There is no evidence that the crossing at that point constitutes any damage whatever to plaintiff's property; his title is doubtful, and the rule in all such cases is that an injunction shall not issue until the title is .established.

The general rule is that an injunction will issue to prevent a railroad company from taking possession of a right of way and constructing its road over private property without first making payment to the owner for the property taken (1 High on Injunctions [3d Ed.] § 622); and it is undoubtedly the law, also, that this general rule applies as well to the protection of private rights in a mining claim as to private property in other lands (Montana Cent. Ry. Co., 25 L. D. 250; 1 Lindley on Mines [2d Ed.] § 153; Barringer & Adams, 187), even

though such claims only show "prospects" for mineral values (Montana Ry. Co. v. Warren, 137 U. S. 348, 11 Sup. Ct. 96, 34 L. Ed. 681). This case, however, is within the exception to the general rule: First. Both litigants claim title to the ground in question, and the plaintiff's title is doubtful (1 High on Injunction, §§ 629, 651, 676, 698, 705, 728, 732). Second. The land is not shown to be mineral in character, nor is any damage shown to have resulted to the plaintiff by the construction of the bridge across the nonnavigable slough. The application for injunction is denied.