ALASKA PACIFIC RY. & TERMINAL CO. v. COPPER RIVER & N.
E. RY. CO. et al.

(First Division. Juneau. June 11, 1907.)

No. 623A.

1. EMINENT DOMAIN (§ 275*)—REMEDIES OF OWNERS OF PROPERTY—
INJUNCTION—RAILROADS.

An injunction will not issue to restrain the building of one rail-
road across another on grade, where both parties are in posses-
sion, both claiming title to the same ground under conflicting ti-
tles, and where the evidence shows no serious injury to the com-
pany applying for the injunction.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. §
275.*]

2. EMINENT DOMAIN (§ 275*)—REMEDIES OF OWNERS OF PROPERTY—
PUBLIC LANDS—RAILROADS.

Where the plaintiff railroad claims possessory title to terminal
grounds under Act May 14, 1898, c. 299, 30 Stat. 409 (U. S. Comp.
St. 1901, p. 1412), and seeks to enjoin the defendant railway, who
claims possessory title to the same ground by virtue of alleged
prior valid oil locations, from entering thereon, held, the court
will not grant an injunction against defendants until the title,
then pending before the Land Department, is first settled in that
department.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. §
275.*]

3. RAILROADS (§ 80*)—RIGHT TO USE WAY OF OTHER RAILROAD—CAN-
YON, PASS, OR DEFILE.

Where the contour of the ground is such as to prevent a sec-
ond railroad from passing without crowding upon the first rail-
way's rights of way, the court will enforce the canyon, pass, or
defile clause, though there may in fact be no canyon walls.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 204–
208; Dec. Dig. § 80.*]

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

Harold Preston, Shackleford & Lyons and F. M. Brown, for plaintiff.

W. H. Bogle, Charles P. Spooner, and Winn & Burton, for defendants.

WICKERSHAM, District Judge (orally). This is an application for an injunction on the part of the Alaska Pacific Railway & Terminal Company to restrain the Copper-River & Northwestern Railway Company, the Katalla Company, and M. K. Rogers, the superintendent of the defendant companies from entering upon plaintiff's terminal grounds, opposite Martin Island, near Katalla, and building defendants' railroad across the same, and from crossing plaintiff's tracks now built thereon.

The plaintiff company shows that it has located terminal grounds on the seashore for its road, and has built a grade on bridging across the ground along the line of its definite location, and is in possession thereof. The defendant companies have begun their road a mile or two southward, and are building over and across plaintiff's terminal grounds, and will, unless restrained, cross plaintiff's railroad upon grade.

The amended complaint states plaintiff's cause of action in apt language, but for the purposes of this action it will not be necessary to read it. Both counsel and the court are familiar with its allegations, but for present explanation the court will read the prayer thereof as follows:

"First. That an order be made and entered herein requiring the defendants, and each of them, to appear before the judge of this court, now sitting at Juneau, Alaska, upon a certain day to show cause why they should not be restrained and enjoined from in any wise entering upon or encroaching upon the said terminal tract No. 1B and right of way for 100 feet on each side of the lines passing through said tract No. 1B, and from in any wise erecting any structures for railroad purposes, or otherwise, upon said tract and right of way, and that they may be enjoined in the meantime until the hearing of the said order to show cause.

"Second. That the plaintiff be adjudged the owner of and entitled to the possession of all the land within the exterior boundaries of said tract No. 1B, also of the right of way for 100 feet on each side of lines of railroads, as indicated on said map and passing through said tract, and that upon the trial of this suit a decree be made and entered herein perpetually enjoining the defendants, and each of them, their agents, servants, and employés, and all persons working under them, from interfering with the exclusive right and enjoyment of the plaintiff herein to the possession of the land included within the exterior boundaries of the said tract No. 1B and said right of way for 100 feet on each side of the lines of railroad passing through said tract, and for such other and further relief as to the court may seem meet and proper."

Plaintiff company confines itself, by the allegations of the complaint, to the ground within the exterior boundaries of its terminal tract No. 1B, and also includes within the prayer an application to prevent the defendants from crossing the line of plaintiff's right of way in so far only as it is included within the limits of terminal tract No. 1B. The court will restrain a railway company from entering upon private property and damaging it, or building railroads upon it, or any trespasses of that nature, until it shall have a right to do so under the law. In a proper case, where it is shown that a railroad company is entering upon the private property of a citizen without having acquired the right to do so by law, by the exercise of the law of eminent domain or otherwise, it may become the court's duty to issue an injunction or temporary restraining order to give the plaintiff an opportunity to litigate its rights; but that rule applies only in cases where there is a threat to cross private property—property to which the plaintiff has the title or other exclusive right of possession. In this case it is not shown that the plaintiff has any title, or any further or greater right of possession, to the property than the defendant, and the court will be very slow to grant an injunction in a case of this kind.

The principle involved in this case was before, this court in the case of Steele v. Tanana Mines Railway Co., 2 Alaska, 451, and it was there held:

"It is not shown that the railroad was being constructed across the slough, or that the ground which it crosses is mineral in character. There is a fair dispute as to the ownership of the ground at the point where the railroad crosses the slough. The defendant has a deed from both homesteaders for the opposite banks at that point, and probably, under the statute, to the thread of the steam. Thre is no evidence that the crossing at that point constitutes any damage whatever to the plaintiff's property. His title is doubtful, and the rule in all such cases is that an injunction shall not issue until the title is established. The general rule is that an injunction will not issue to prevent a railroad company from taking possession of a right of way and constructing its road over private property without first making payment to the owners for the property taken. * * * This case, however, is within the exception to the general rule: First. Both litigants claim title to the ground in question, and the plaintiff's title is doubtful. 1 High on Injunctions, §§ 629, 651, 676, 698, 705, 728, 732. Second. The land is not shown to be mineral in character, nor is any damage shown to have resulted to the plaintiff by the construction of the bridge across the nonnavigable slough."

The application for an injunction in that case was denied, on the ground that plaintiff's title was doubtful—so doubtful that injunction ought not to issue against another who claimed an equal right of title to the same property. The Circuit Court of Appeals affirmed the case. Steele v. Tanana Mines Ry. Co., 148 Fed. 678, 78 C. C. A. 412. So I take that rule as settled in this territory.

The same rule was applied in the case of McFarland v. Alaska Perseverance Mining Co., 3 Alaska, 308, and I held in that case that the plaintiffs' title to the property in controversy was doubtful; that it was not shown that any appreciable damage was being done thereto, and because it further appeared in that case from the evidence that if an injunction was issued a greater damage would be done to the defendant than to the plaintiff by refusing it.

In the case at bar there are oil and placer mineral locations covering the ground in controversy and now claimed by the plaintiff. These were made prior to the time when the plaintiff claims to have acquired any right to this property and are owned by the defendant. Whether these locations are void or not I am not at this time permitted to determine. I am constrained to follow the rule laid down in the case of Cosmos Exploration Co. v. Gray Eagle Oil Co., 190 U. S. 301, 23 Sup. Ct. 692, 47 L. Ed. 1064, and hold that, in that class of cases, whether or not such questions are valid is a question for the Land Department to decide, and not for this court. It is undoubtedly the law, when a citizen of the United States has gone upon the public domain, and has marked the boundaries of a tract of land, not exceeding 20 acres in extent, so that the boundaries thereof can be readily traced, and has within the time limited by law filed his notice of location for record with the recorder, and has made a discovery of mineral—coal, oil, or gold—that the land so embraced within his mineral claim is segregated from the public domain. It is no longer a part of the public domain. It is private property. The title is fixed, the government is his trustee, and when he has finally completed his proofs and secured the patent it will relate back to the initiation of his rights. If that principle is applied to this case, and these mining claims, it is clear to the court that the plaintiff has no such title to that property as would justify the court in saying that it was beyond doubt or dispute its property.

There is another serious question involved in this case under the third section of the act providing for railroad rights of ways in Act May 14, 1898, 30 Stat. 409, in respect to the definition of the phrase "canyon, pass, or defile," within the meaning of that statute. The conditions here are such that defendants must cross this particular tract of ground or they cannot get their railroad out of their terminus at Katalla.

These two roads are so laid out that the plaintiff's road, beginning at Martin Island and running northeast, and the defendants' road, beginning at Katalla and running northwest, must cross each other to get away from their terminal points. The contour of the ground is shown by the maps in evidence to be such that the defendants must cross the high ground to the north of plaintiff's terminal at the lowest point, which is about 90 feet in height. The plaintiff says in answer thereto that the defendants may go around their tract by following up the hillside with several curves, and thus climb the hill and go over the top of it. The defendants answer that the character of the road which they are building is such that they cannot do that. It is apparent to the court that defendants must go over the route they have laid out, and I am not prepared to say that the court would be justified in making an order compelling them to climb the hill, instead of building through a cut on a proper grade. The conditions are such that after they cross the hill they would have at least two miles of grade of more than 1 per cent., and it would apparently be a very great damage in the future maintenance of the road, and I am inclined to think that the statute cited applies to that kind of a situation.

It is not necessary that it be a canyon like the Grand Canyon of the Colorado, or other of the great canyons of the West, to justify the court in applying that statute. Speaking from a railroad standpoint, a continuous rise of a few feet for a long distance may actually stop progress. It may be impossible to build a road over it, although it might not rise into mountain walls. If to pass such a place it required a cut of such depth, or a tunnel of such a length, or grade of such a percentage, as to be prohibitive, and it could be avoided and overcome by following a level valley, wherein another road claimed exclusive rights, the fair construction of the statute might jus-

tify the court in applying it to the case, though the usual canyon walls are not existent.

At the point in question the sea is upon one side and the hill on the other. The hill at that point is precipitous, probably not more than 90 or 100 feet high, but high enough to prevent crossing at a proper grade except on the line of the present location; and my judgment is that the defendant is entitled to appeal to that clause of the statute for relief. I agree with counsel for plaintiff that they have no right to cross the private property of another person, even under the canyon, pass, and defile clause, and thereby take private property without condemning and paying for it, and if that was all there was to this case I would be inclined to grant the injunction until such time as that was done; but in the view which I take of the law it is very doubtful whether the plaintiff has any legal right under the law to this tract No. 1B.

The statute of 1898 (30 Stat. 409) provides that the constructing railway shall prepare a map showing the terminal ground, not exceeding 40 acres, and file the same under rules and regulations to be approved by the Department of the Interior, and not until it is approved has plaintiff any such possession as will justify the court in granting an injunction. That matter is now pending before the department. Plaintiff may acquire title to the property, and may not. Up to the time that it does it is not in possession in any other sense than that it is there employed in building an approach to Martin Island on piles, over a portion of the right of way as shown on these maps. Plaintiff's title is doubtful in respect to these mineral claims. I do not think that plaintiff has shown that it is in a position at this time to claim undisputed right of possession and title; at least, it is not in any better position than the defendants. In regard to its right of way it may stand in a better shape. The evidence and the maps show that plaintiff has something like 1,000 feet of piling built for track and

roadbed. The defendants must cross that particular piece of piling, plaintiff's right of way; and if the court should restrain them from doing so the effect would be to cut their work in two parts and very greatly injure them.

The argument for defendants appeals to me very strongly that the damage to defendants would be great. It is stated that the defendants have 500 or 600 men at work. Both sides seem to be in good faith and vigorously at work building roadway. The defendants have a large number of men working and a large amount of supplies on the ground, and would be greatly damaged by an order of court preventing them from crossing this particular right of way at that place. The damage would be so out of proportion to the small damage done by crossing plaintiff's ground and track on grade that I shall permit it as a matter of practice. Defendants have to cross plaintiff's line somewhere to get out of their terminal. If they go over the high grade suggested by the plaintiff, they would still have to cross plaintiff's road, and the same condition would confront them at that point. The mere fact of their crossing plaintiff's road, established on grade, does not appeal to me as being such an injury as would justify this court in granting the injunction.

Both companies are engaged, seemingly in good faith, in building railroad, and the court ought not to grant an injunction to interfere with such construction, since no irreparable injury is done thereby. There is a question about plaintiff's right of way. I think it is a serious question. The defendants have equal rights with plaintiff to build a railroad across government land. The evidence shows that both sides are building without formal corporate organization fully completed; that neither has reached perfection in its corporate organization. There have been omissions in both titles. The defendants do not show in their evidence that they have any right to build from Katalla under their corporate organization.

That declares that they will build from Valdez, a distant point, instead of which they are now constructing their road from Katalla, which they may lawfully do. Washington Ry. Co. v. D'Alene Ry. Co., 160 U. S. 77, 16 Sup. Ct..231, 40 L. Ed. 346.

The plaintiff, however, has no title which must be accepted as private property in tract No. 1B. It may never get title, and yet the prayer of its complaint asks that it be decreed to be the owner of that tract of public land over which both seek to build. The court has no right to do that. The Department of the Interior may refuse to recognize the title of either to that tract, and it must be apparent to counsel that the decree of this court would be doubtful as against a different decree made by the Department of the Interior. I am persuaded from all the evidence in the case that plaintiff is not legally injured. Plaintiff's outline of its terminal ground, with switches, buildings, roundhouses, and yards, looks well on paper; but it does not exist as a fact. The plaintiff may cross defendants' road, and will then enjoy a large area of ground on the public land, with ample natural facilities for terminal purposes, and that would enable both roads to be built. It would not stop the progress of either. It would not do damage to plaintiff, at least not so great as the action of the court in granting an injunction.

Injunction denied.